# VON PHUL & McGILL vs. JOHN B. MOFFITT.

Where the instructions given by the court contain the law applicable to the facts of a case, the supreme court will not disturb the finding of the jury, if the evidence warrants it.

## ERROR TO ST. LOUIS CIRCUIT COURT

### STATEMENT OF THE CASE.

This was an action of assumpsit for use and occupation of a mill at Rushville, in the state of Illinois, brought by Moffitt against Von Phul & McGill, in the circuit court for the county of St. Louis, for the November term, A. D. 1844, thereof.

On the trial, Moffitt proved that one A. R. Skidmore acted as agent for Von Phul and McGill in leasing and managing said mill; that the mill was first leased from October 1, A. D. 1841, to January 1, 1842.

His witness, James B. Sweatland, deposed that in the early part of December, Skidmore wished to get the mill for another six months; that Moffitt was willing, giving as a reason that the mill was mortgaged to the bank of Illinois for a debt, and that the rent would aid him to pay it, and thereby perhaps save the mill for him, and that if Von Phul and McGill rented it again, he would like to have them pay the rent as it become due to the bank. This conversation ended by Skidmore telling Moffitt to send him, as soon as it was convenient, a written proposal, stating the sum and terms of payment for six months, from January 1, 1842, (see page 12 of record) about a week after. Moffitt, in the absence of Skidmore, handed a written proposal to witness, who was then Skidmore's book keeper. Skidmore returned the next day, when he handed the writing to him; and Skidmore said it was as favorable as he could wish, and that he believed he should close the contract, and have the writings drawn the first leisure time he had. The rent was to be $650—$100 in flour and bran; $150 in repairs; the balance in money from time to time. He (Sweatland) afterwards heard Skidmore say that he had leased of Moffitt according to his proposal; that Moffitt was to make out the writings and leave them with his miller, Clements, which, upon his return from Pekin, he was to sign. Upon his return, witness asked him, if he and Moffitt had signed their articles. Skidmore replied he had not; that Moffitt had placed them in the hands of Clements, and he would sign them that day if he thought of it when at the mill. This occurred sometime in January, 1842.

Clements (the miller) deposed that Skidmore occupied the mill till the fore part of March, 1842. That Skidmore agreed to take another lease from Moffitt for six months from January 1, 1842, and he understood Moffitt was to prepare the writings, and Skidmore was to sign them; that about December 20th, Moffitt handed him, in the presence of Skidmore, a writing dated December 20th, 1841, purporting to be a lease to Von Phul & McGill of the mill for six months from January 1, 1842. Skidmore said he would sign it sometime during that day when he got time to examine it, if it corresponded with his understanding of the contract. At coming, witness handed him the writing which Skidmore said, after reading, was in substance correct, and that he would sign it upon his return from Pekin, where he was going the next day. Upon his return he refused to sign it, and said he was glad he did not sign it before he went to Pekin; for since then the bank had notified him of its mortgage claim, and that it would hold him responsible for the rents and proffits of the mill; that exhibit C is the writing he has spoken of; (it purports to be a lease of the mill to Von Phul & McGill for said six months, for $650 payable as aforesaid) that he held the writing till May 12th, 1842, and then delivered it to Moffit at his request; (see pages 18, 19 and 20 of record.) James Dunlap deposed that neither

VON PHUL & McGILL vs. JOHN B. MOFFITT.

A. R. Skidmore or Von Phul & McGill ever paid the bank of Illinois any rent for said mill; that said bank had a mortgage on said mill, under a foreclosure of which the mill was sold in September, A. D. 1842, until which time possession was with Moffitt or those claiming under him; that he was president of said bank; that June 19th, 1843, said bank received $130 on account of rent of said mill, and relinquished then to said Moffitt all claim for rent that may be due from said Skidmore or Von Phul & McGill.

A. R. Skidmore, for Von Phul & McGill, deposed that he leased the mill for a time, to end January 1, 1842, that during this time the bank notified him of its mortgage, and that unless it was settled, it would hold Von Phul & McGill for the mill after January 1, 1842; that in December, Moffitt wanted him, as agent for Von Phul & McGill, to lease the mill of him for six months from January 1, 1842; that he refused so long as the bank claimed the right to it; that Moffitt then said if he did not, the defendant should not have it after January 1, 1842; that he then told him if he would satisfy the bank, so that it would release its claim, he would lease it of him Moffitt agreed to this upon this condition, and arrangement was made for a lease. Moffitt drew up a lease, and put it into the hands of Clements, who showed it to him just as he was about to leave for Pekin; that he looked at it, but told him that he should not sign it till his return. Upon his return he received a notice from the bank that Moffitt had not settled its claim, and that it would hold him as agent for Von Phul & McGill, responsible for the mill; and he therefore refused to sign the lease. Moffitt then again assured him that he would still make it all right with the bank, and desired me to let him have some money for that purpose, and after some talking about it, he let him have $130. About a month after, the bank again notified him that its claim was not settled, and that he must hold the mill subject to its order. He then closed up the mill, and left it in the fore part of March, and notified the bank of it. He remained in Rushville in settling up demands and the business till April.

The mill was left because Moffitt had not settled with the bank as was the express condition of the bargain for it and this made the situation of Von Phul and McGill uncertain; that he had paid Moffitt in flour, bran, repairs and money $280,06 at the time of his leaving; the lease was to be for six months from January 1, 1842, for $650, $100, in flour, and bran, $150 in repairs and $400 in cash.

Upon this evidence on behalf of Von Phul and McGill the following instruction was asked for Von Phul and McGill to wit: "If the jury believe from the evidence that Skidmore made it a condition with Moffitt, before he would bargain with him for the use of the mill, that Moffitt should satisfy the claim of the bank so that the bank would release its claim, and that Moffitt did not do it as agreed, then the most that said Moffitt can claim of the defendants is for the time they used the mill—and if the jury finds this greater than the defendants have paid, their verdict should be for the excess, if equal only or less, their verdict should be for the defendants." The court refused this instruction to which, exceptions was duly taken.

But the court of its own motion, gave an instruction differing from the above only in this, to wit: by adding, after the words, "and that Moffitt did not do it as agreed," these words to wit: "and in consequence of such failure, Skidmore quit the premises," to which instruction exception was duly taken, on behalf of Von Phul and McGill. The court gave the following instruction on behalf of Moffitt, to wit: "But should the jury believe from the evidence, that no such condition was made, but on the contrary, it was understood between said Moffitt and Skidmore, that the rent of the property should be paid by Skidmore to the Bank as mortgagee, then neither the existence of the mortgage, nor any notice or claim of rent, by the bank as mortgagee could operate as an excuse for quitting the premises; and in this view, the defendants would be liable for the whole time specified in the agreement, after allowing all payments, which the jury shall find from the evidence, to have been made;" to the giving of which exception was duly taken, on behalf of Von Phul and McGill. The verdict was for Moffitt, for $428,59. A motion to set aside said verdict, and grant a new trial was duly made, and for the following reasons, to wit:

1st. Because instructions given were erroneous.

2nd. Because the court erred in refusing the instruction asked, on behalf of Von Phul and McGill.

3rd. Because the verdict is against law.

4th. Also against the law under the evidence.

5th. Also against the weight of evidence.

6th. Also against the evidence.

7th. Because the court in its instructions assumed the existence of facts, which were disputed and should have been left to the jury.

This motion the court overruled, to which decision exceptions were duly taken on behalf of Von Phul and McGill.

The case is brought into this court as upon writ of error.

## Todd, for plaintiff.

1st. The court erred in refusing to give the instruction asked for, on behalf of the plaintiffs in error, because the non-performance of a condition of a contract by one party, authorizes its abandonment by the other. Story on contracts, p. 467, sec. 670.

2nd. The court erred in giving its own instruction, because it makes the right of abandonment asserted in point one, depend upon, whether the non-performance was the moving cause, or motive of the exercise of this right.

3rd. The court erred in giving the instruction asked in behalf of the defendant in error, because there is no evidence of any understanding, that Skidmore, should pay the rent, to the bank, but the contrary is proved, by the evidence produced, on behalf of Moffitt himself.

See the testimony of Sweatland, p. 13 and 14 of record.

Also that of Clements, pages 18, 19 and 20 of record; also exhibit "C." being the understanding of Moffitt himself, or as by himself, reduced to writing for Skidmore to sign with himself, who had signed it.

The nature of the rent, also precludes the idea being in flour, &c.

4th. The plaintiffs in error became liable to an immediate ejectment to the bank, after its notice and exclusive claim to the property, and therefore, had the same right to quit voluntarily, as the bank had, to eject them by suit, and such a quitting would be a defence to the claim of Moffitt for any rent thereafter, as would an eviction by process of court under a paramount title. 15 Pick. Rep. p. 147; 1 Metcalf's Rep. p. 494.

1 Vol. Smith's Leading cases, p. 310 (side paging;) Moss vs. Gillmore, with English and American notes.

The verdict is grossly against evidence See evidence of Skidmore, p. 30.

## Hill, for defendant.

1st. The defendants below, asked an instruction, presenting this case to the jury, on the question, whether the plaintiff let to defendants, on the condition that he would settle the claims of the bank, on the mortgage; and the court gave that instruction with a slight qualification; and also gave the exact converse of the defendants instruction, on which the jury found for the plaintiff. The jury could not have found a verdict for the plaintiff on the instructions, unless they believed that there was no such condition annexed to the lease, for Skidmore swore, that defendants left for that reason.

2nd. The defendants cannot object to the addition of the words to their instruction, "and Skidmore, the agent for defendants, left for that reason," because these were the very words used by Skidmore in his testimony, and the reasons assigned by him as defendants agent, for

quitting the premises, so they have had the law declared by the court below, to correspond with their witness Skidmore's statement; and the finding of the jury only impeaches their witness, and gives them no ground for a new trial.

3rd. The parol statements prior to the conclusion of the contract, which was reduced to writing, are of no avail, and the condition set up by defendants is not in the case, upon the defendants own showing, in the supreme court, so the instruction of defendants in any form, was not admissible, for there was no condition legally proven, annexed to said contract of letting.

4th. A mortgagor in possession prior to forfeiture, has the legal seizin; 4 John R. 41. A mortgagee has not an estate in fee, but a *mere security for a debt*, and a discharge of the debt, even by parol, is a discharge of the mortgage, and evidence thereof, in ejectment would defeat the mortgagor; so a mortgagor *in possession*, is the *real owner*, until foreclosure. Id. by Kent. Ch. J. Richards vs. Simms, Ch. Rep. 90; 2 Burr. 969, Martin vs. Mowlen; Doug. 610 and 630, the King vs. St. Micheal; Doug. 455, Eaton vs. Jacques; 1 Hy. Blk. 117 note, Chinney vs. Blackburn; Doug. 114 Jackson vs. Vernon; 1 East. 288, the King vs. Inhab. of Edington; Steward vs. Waters, 1 Caines cases in Eng. 47.

5th. Until foreclosure or possession taken after forfeiture, the mortgage is a *chose in action*. 4 John. 43, and a mere pledge or lien, 6 John. 295; so that the wife of a mortgagor upon his death, is entitled to dower in the mortgaged premises previous to foreclosure. 7 John. 278; Runyan vs. Mercereau, 11 John. 534; Coles vs. Coles 15 John. 319; 9 Mo. 550; 10 Mo. 230; 2 Cow. 195, 230, 1, 1 Conn. 519; 5 Pick. 146; 6 Pick. 416, 19 John. 325: 7 Greenl. 41, 1 Day 93; 1 Caines Cas in En. 47; 7 Mass. 133; 9 Mas. 101; 16 Mass. 345, 5 Conn. 133; 1 Halst. 466.

6th. A lease by the mortgagor, subsequent to the mortgage is valid between him and the lessee, and as to all the world, except the mortgagee, after the forfeiture. Bowdoin ad. Bacon 22 Pick. Rep. 401; and the mortgagor is entitled to recover the rent. Smith's Lead Cas. vol. 1, p. 426; unless there is eviction by the mortgagor, or a surrender of the possession by the tenant to the mortgagee. Id. McKirchen vs. Hawley, 16 John. 289, is in point.

7th. The claim of the Bank on the mortgage, was no excuse for the abandonment by defendants, for they had agreed to pay the rents to the mortgagee for the benefit of the mortgagor in possession, who had the right thus to provide for the extinguishment of the mortgage, and if the defendants had attorned or delivered up the possession to the mortgagee, the plaintiff could have had an account for the whole rents and profits.

8th. There has been no demand of possession, nor for an attornment of defendants, to the mortgagee; the only demand was for rents, for money, and these the defendants had agreed to pay, or might have paid the bank, and failing to do so, use the demand of the mortgagee as an excuse for their own wrongful abandonment. The defendants were never disturbed or evicted, by the mortgagee, nor asked to attorn, nor have they attorned. The relation of landlord and tenant then existed until the end of the term, between plaintiffs and defendants, and the bank released even all claims for rent.

9th. The instructions of the court, based on defendant's testimony, put the case more favorably to the jury, for the defendants, than the law of the case would warrant; and the finding of the jury is conclusive of the facts, and cannot be disturbed.

The judgment, then should be affirm.

RYLAND, Judge, delivered the opinion of the court.

The only point necessary for this court to examine, consists in the giving and refusing instructions by the court below. These instructions are embodied in the above statement. The one asked for, by the defendants below and which was refused by the court, in the words as

37

asked, but which was given with but a small additional alteration, and the one which the court gave on behalf of the plaintiff below.

The instruction given by the court, is in the following words.

"If the jury believe from the evidence, that Skidmore made it a condition with Moffitt before he would bargain with him for the use of the mill, that Moffitt should satisfy the claim of the bank, so that the bank would release its claim, and that Moffitt did not do it, as agreed, [and that in consequence of such failure, Skidmore quit the premises,] then the most that the said Moffitt can claim of the defendants, is for the time they used the mill, and if the jury find this greater, than the defendants have paid, their verdict should be for the excess, if equal only, or less than their verdict should be for the defendants."

The defendants asked this instruction without the words above inclosed in brackets, which the court refused in that form, but gave as above set forth. This is the chief ground of complaint, by the plaintiffs in error. The testimony of Skidmore expressly states, that in consequence of Moffitt's failing to satisfy the bank, he closed the mill and quit the premises. The instruction therefore brought the truth of this statement directly before the jury—suppose such had been the condition of this letting, and that Moffitt had failed to pay the bank, but yet the defendants continued to occupy the mill until the expiration of the six months, and after this, that Moffitt had fully paid the bank, and the defendants never had been called on for the money by the bank, can they in good conscience set up Moffitt's failure to satisfy the bank, during their lease, which failure caused them no inconvenience, no injury, as a valid defence to the claim of Moffitt against them for their rent?

I find no fault, with the instruction as given by the court; and indeed the difference between the one asked for, and the one given, is so technical, that the jury may not have been fully aware of it. The other instruction is merely the converse of the one given. I am satisfied, that these instructions fairly put the merits of this controversy before the jury and they having found their verdict thereon, the court below committed no error in refusing to set the same aside and grant a new trial.

The judgment of the court below is therefore affirmed. Napton, J. concurring herein.